**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LOS ANGELES WATERKEEPER, A California non-profit corporation, | Civil Case No 2:19-cv-05068 |
| Plaintiff, | **CONSENT DECREE** |
| vs. | |
| SECURITY PAVING COMPANY, INC., a California corporation, | **(Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.*)** |
| Defendant. | |

## **CONSENT DECREE**

The following Consent Decree is entered by and between Los Angeles Waterkeeper ("Waterkeeper") and Security Paving Company, Inc. ("Defendant" or "Security"). The entities entering this Consent Decree are each an individual "Settling Party" and collectively the "Settling Parties."

**WHEREAS**, Waterkeeper is a 501(c)(3) non-profit public benefit corporation organized under the laws of the State of California, with its main office in Santa Monica, California;

**WHEREAS**, Waterkeeper is dedicated to the preservation, protection, and defense of the rivers, creeks, and coastal waters of Los Angeles County from all sources of pollution and degradation;

**WHEREAS**, Security is the owner and operator of a concrete/aggregate reuse and recycling facility located at 8960 Bradley Avenue, Sun Valley, California, hereinafter referred to by the Settling Parties as the "Security Facility";

**WHEREAS**, the Security Facility operates under SIC code 3295—Minerals and Earths, Ground or Otherwise Treated with the Waste Discharge Identification ("WDID") number of 4 19I026031; industrial activities occurring at the Security Facility include storing concrete, asphalt rubble and aggregate base, crushing raw materials to create aggregate base, weighing raw materials and finished aggregate base, conveyance and storage of materials via conveyors and hoppers, and vehicle loading and unloading

**WHEREAS**, Plaintiff's members live and/or recreate in and around waters which Plaintiff's members allege receive discharges from the Security Facility to the Los Angeles County municipal storm sewer system, and into waters of the United States, including the Los Angeles River and Queensway Bay adjacent to Junipero Beach (collectively the "Receiving Waters"), and contends that those discharges are regulated by the Clean Water Act, Sections 301(a) and 402, 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS,** storm water and non-storm water discharges from the Security Facility are regulated by the National Pollutant Discharge Elimination System

("NPDES") General Permit No. CAS000001 [State Water Resources Control Board] Water Quality Order No. 92-12-DWQ, as amended by Order No. 97-03-DWQ, as superseded by Order No. 2014-0057-DWQ and amended by Order No. 2015-0122 – DWQ ("Storm Water Permit") and the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.* ("Clean Water Act" or "CWA"), Sections 301(a) and 402, 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS**, the Storm Water Permit includes the following requirements for all permittees, including Security: (1) develop and implement a stormwater pollution prevention plan ("SWPPP"), (2) control pollutant discharges using, as appropriate, best available technology economically achievable ("BAT") or best conventional pollutant control technology ("BCT") to prevent or reduce pollutants, (3) implement BAT and BCT through the development and application of Best Management Practices ("BMPs"), which must be included and updated in the SWPPP, and, (4) when necessary, implement additional BMPs to prevent or reduce any pollutants that are causing or contributing to any exceedance of water quality standards;

**WHEREAS**, on April 10, 2019, Waterkeeper sent Security, the United States Environmental Protection Agency ("EPA"), EPA Region IX, the State Water Resources Control Board ("State Board"), and the Los Angeles Regional Water Quality Control Board ("Regional Board") a notice of intent to file suit ("Notice Letter") under Sections 505(a) and (b) of the Clean Water Act, 33 U.S.C. §§ 1365(a) and (b). The Notice Letter alleged violations of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), and violations of the Storm Water Permit at the Security Facility;

**WHEREAS**, on June 11, 2019, Waterkeeper filed a complaint against Security in the United States District Court, Central District of California alleging violations of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), and violations of the Storm Water Permit at the Security Facility ("Complaint");

**WHEREAS**, Waterkeeper alleges Security to be in violation of the substantive and procedural requirements of the Storm Water Permit and the Clean Water Act with

respect to the Security Facility;

**WHEREAS**, Security denies all allegations in the Notice Letter and Complaint relating to the Security Facility;

**WHEREAS**, Plaintiff and Security have agreed that it is in the Settling Parties' mutual interest to enter a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the Complaint with respect to the Security Facility without further proceedings;

**WHEREAS**, any reference to Attachment I of the Storm Water Permit is for the purpose of resolving the allegations set forth in the Complaint with respect to the Security Facility only;

**WHEREAS**, all actions taken by Security pursuant to this Consent Decree shall be made in compliance with all applicable federal and state laws and local rules and regulations.

**NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1. The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a) of the Clean Water Act, 33 U.S.C. § 1365(a).

2. Venue is appropriate in the Central District of California pursuant to Section 505(c)(1) of the Clean Water Act, 33 U.S.C. § 1365(c)(1), because the Security Facility is located within this District.

3. The Complaint states claims upon which relief may be granted pursuant to Section 505(a)(1) of the Clean Water Act, 33 U.S.C. § 1365(a)(1).

4. Plaintiff has standing to bring this action.

5. The Court shall retain jurisdiction over this matter for purposes of interpreting, modifying, or enforcing the terms of this Consent Decree for the life of the Consent Decree, or as long thereafter as is necessary for the Court to resolve any motion to enforce this Consent Decree.

# I.    OBJECTIVES

6.    It is the express purpose of the Settling Parties entering this Consent Decree to further the objectives set forth in the Clean Water Act and to resolve those issues alleged by Waterkeeper in its Complaint. Considering these objectives and as set forth fully below, Security agrees to comply with the provisions of this Consent Decree and to comply with the requirements of the Storm Water Permit and all applicable provisions of the Clean Water Act at the Security Facility.

# II.    AGENCY REVIEW AND TERM OF CONSENT DECREE

7.    Plaintiff shall submit this Consent Decree to the United States Department of Justice and the EPA (collectively "Federal Agencies") within three (3) days of the final signature of the Settling Parties for agency review consistent with 40 C.F.R. § 135.5. The agency review period expires forty-five (45) days after receipt by both agencies, as evidenced by written acknowledgement of receipt by the agencies or the certified return receipts, copies of which are to be provided to Security upon request. If the Federal Agencies object to entry of this Consent Decree, the Settling Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies within a reasonable amount of time. Following the Federal Agencies' review, the Settling Parties shall submit the Consent Decree to the Court for entry.

8.    The term "Effective Date" as used herein shall mean the day that this Consent Decree is entered by the Court.

9.    This Consent Decree will terminate five (5) years from the Effective Date, unless prior to the termination date either Party has invoked the dispute resolution provisions of this Consent Decree and there is an ongoing, unresolved dispute regarding either Party's compliance with this Consent Decree, in which case the Consent Decree will terminate upon final resolution of the dispute pursuant to the dispute resolution provisions contained herein.

# III.    COMMITMENTS OF THE SETTLING PARTIES

10.    The Settling Parties acknowledge that Security is in the process of making

significant changes to its Facility to improve storm water quality and/or reduce or eliminate discharges from the Facility (BMPs) Listed in **Exhibit A**.

11. In addition to the BMPs set forth in **Exhibit A**, Security will design, construct and operate a system to capture storm water based upon the 85th Percentile Storm Event for reuse in the industrial processes at the Security Facility as set forth in Attachment I of the Storm Water Permit (Capture BMP). Security shall also: 1) engage a California Licensed Professional Engineer (PE) to design the Capture BMP pursuant to the schedule attached hereto as **Exhibit D** and provide Waterkeeper with the certifications and a curriculum vitae for the PE selected by Security within ten (10) days of the selection of the PE, 2) apply for any necessary permits to construct the Capture BMP pursuant to the schedule attached hereto as **Exhibit D**, 3) obtain necessary permits to construct the Capture BMP pursuant to the schedule attached hereto as **Exhibit D**, 4) commence construction of the Capture BMP pursuant to the schedule attached hereto as **Exhibit D**, and 5) complete construction pursuant to the schedule attached hereto as **Exhibit D**.

11.1. The Settling Parties agree that Security will provide Waterkeeper with design drawings signed by its PE and copies of necessary permits to implement the construction of the Capture BMP within ten (10) days following completion of design drawings as shown on **Exhibit D**, and within ten (10) days of the issuance of all construction permits necessary to build the Capture BMP as shown on **Exhibit D**. Waterkeeper through its licensed California PE will then have ten (10) days as shown on **Exhibit D** to review and comment on the completed design drawings' conformity with the design standards set forth in Attachment I, and on any permits, as necessary. The Settling Parties agree to meet and confer within fifteen (15) days of Waterkeeper's submission of any comments to Security as needed as shown **on Exhibit D**. Within thirty (30) days of completion of construction of the Capture BMP as shown on **Exhibit D**, Security will provide Waterkeeper

with a certification signed by Security's PE certifying that the Capture BMP was built in conformity with the design drawings and permits. Waterkeeper shall be allowed a site inspection in compliance with Section IV below within thirty (30) days of receipt of the certification of completion of the project as shown on **Exhibit D**.

11.2.   Upon Waterkeeper's receipt of the certification by Security's PE that the Capture BMP was built in conformity with the design drawings and permits, and provided the BMPs listed in **Exhibit A** have been fully implemented, Security shall be considered to be in compliance with the provisions set forth in paragraphs 15.1, 17, 18, and 19 of this Consent Decree provided, however: should a discharge occur during a QSE from a discharge point, other than the overflow of the Capture BMP, such discharges will be sampled up to four (4) times during each reporting year as set forth in the Permit for the analytes identified in Table 1 in conformity with paragraphs 15.3 through 15.8 herein; and 2) any discharges from the Capture BMP (excluding storm water used on site for dust suppression without discharge from the Security Facility) shall be sampled and analyzed in conformity with the Storm Water Permit, the analytes identified in Table 1, and paragraphs 15.3 through 15.8 below.

11.3.   Should the Capture BMP fail to fully capture any 85th Percentile Storm Event during the term of this Consent Decree, the Settling Parties agree to follow the procedures for dispute resolution detailed in Section VI to determine what further actions should be taken at the Security Facility to ensure compliance with the Storm Water Permit and the terms of this Consent Decree.

12.   If Security determines that it is infeasible to implement the Capture BMP described above pursuant to the force majeure provisions set forth in paragraph 44 below, Security and Waterkeeper shall meet and confer to discuss the feasibility of an alternative

BMP or BMPs including but not limited to those listed in **Exhibit B**, within thirty (30) days of the determination of infeasibility. Should the Settling Parties be unable to agree on an alternative to the Capture BMP, either party may initiate the dispute resolution procedures described herein.

### A. <u>Storm Water Pollution Control Best Management Practices.</u>

13. In addition to maintaining the current structural and non-structural BMPs described in the Security Facility's SWPPP, Security shall develop and implement BMPs necessary to comply with the provisions of this Consent Decree and the Storm Water Permit that achieve the BAT and the BCT, including those described in **Exhibit A**, and to comply with the Storm Water Permit's Discharge Prohibitions and Receiving Water Limitations.

### B. <u>Discharge Locations and Storm Water Sampling.</u>

14. <u>Discharge Locations</u>. The current and future storm water sample locations for the Security Facility are identified in **Exhibit E,** the Facility site map. Should the future storm water sample locations change from what is presently depicted on **Exhibit E**, Security will provide Waterkeeper with an updated Exhibit within thirty (30) days of such change.

15. <u>Sampling</u>. The following storm water monitoring procedures shall be implemented at the Security Facility:

    15.1. <u>Frequency</u>. During the life of this Consent Decree, Security shall collect samples from all discharge locations at the Security Facility from a minimum of four (4) "qualifying storm events" that occur in a reporting year such that Security collects two (2) samples during the first half of the reporting year and two (2) samples during the second half of the reporting year. A "qualifying storm event" or "QSE" is a storm event that produces a discharge from at least one drainage area and is preceded by forty-eight (48) hours with no discharge from any drainage area. If, prior to March 1, Security has collected samples

from two (2) or fewer qualifying storm events, Security shall, to the extent feasible, collect samples during as many QSE's as necessary until a minimum of 4 storm events have been sampled for the reporting year. No two (2) samples may be from the same storm event.

15.2. <u>Contained or Stored Storm Water</u>. To the extent storm water is stored or contained, Security shall sample the stored or contained water at the Security Facility before it is discharged from the Security Facility even if not during operating hours.

15.3. <u>Parameters</u>. Security shall analyze each storm water sample collected from a Sample Location for the contaminants set forth in the Table 1 Numeric Limits.

15.4. <u>Laboratory</u>. A laboratory accredited by the State of California shall analyze all samples collected pursuant to this Consent Decree.

15.5. <u>Detection Limits</u>. The laboratory shall use analytical methods adequate to detect the individual contaminants at or below Table 1 Numeric Limits.

15.6. <u>Hold Time</u>. All samples collected from the Security Facility shall be delivered to the laboratory as necessary to ensure that sample "hold time" is not exceeded for each contaminant sampled. For field measurements, such as pH, Security shall use portable instruments, and not pH paper, which shall be calibrated and used according to manufacturers' instructions and approved industry methodology, i.e., 40 C.F.R., Part 136.

15.7. <u>Results</u>. Security shall request that sample analysis results be reported to them within ten (10) days of laboratory receipt of the sample, or as soon as possible without incurring "rush" charges.

15.8. <u>Reporting</u>. Security shall provide Waterkeeper with the complete

laboratory results, including a copy of the Quality Assurance/Quality Control and the laboratory report for all samples described and taken in accordance with the samples identified in paragraphs 14.1 and 14.2 collected at the Security Facility, within five (5) business days of receiving the results.

16. <u>Contaminant Reduction</u>. Security shall develop and implement additional BMPs to reduce pollutants in storm water discharges from the Security Facility to levels below those in Table 1 under the terms of this Consent Decree set forth below ("Numeric Limits").

**Table 1. Numeric Limits**

| Analytes | Values |
|---|---|
| Total Suspended Solids | 100 mg/L |
| Zinc* | 0.159 mg/L |
| Iron | 1.0 mg/L |
| Copper* | 0.06749 mg/L |
| Oil and Grease | 15 mg/L |
| Aluminum | 0.75 mg/L |
| Lead* | 0.094 mg/l |
| pH | 6.5-8.5 s.u. |

Analytes in Table 1 identified with an asterisk reference Total Maximum Daily Loads and corresponding Numeric Effluent Limits for the applicable Receiving Waters (Los Angeles River) effective and enforceable on July 1, 2020.

17. <u>Analyte Reduction Strategy for Table 1 Exceedances</u>.[1] During the construction of the Capture BMP, or in the event that Security fails to implement the Capture BMP, and if Security's monitoring reveals two exceedances during any reporting year of any single Numeric Limit specified in Table 1, Security shall submit a plan to Plaintiff for reducing the level of pollutant to Table 1 Limits ("Analyte Reduction Strategy" or "ARS") in accordance with paragraphs 19 and 20 below.

---

[1] According to Case Law, the State Board, and the U.S. Department of Justice, an exceedance of any single parameter does not necessarily constitute a violation of the Permit. For purposes of this Consent Decree only, "exceedance" is defined by § III.B.17, and the term should be considered separate and distinct from any interpretation of "exceedance" in the Permit.

17.1. The ARS for the Security Facility shall be prepared by a Qualified Industrial Storm Water Professional ("QISP") and must be submitted to Plaintiff within thirty (30) days of Security's receipt of sampling data showing exceedances of Table 1 Limits.[2] Any ARS required by this paragraph, shall be prepared by a QISP and must be submitted to Plaintiff within thirty (30) days of Security's receipt of sampling data showing the exceedance of the limit for the same pollutant listed in Table 1 Numeric Limits. In the event of exceedances for multiple analytes, Security may submit a single ARS addressing all analytes.

17.2. Analyte Reduction Strategy Requirements. An ARS shall include at a minimum: (1) the identification of the contaminant(s) discharged in excess of the numeric value(s); (2) an assessment of the source of each contaminant discharged in excess of the numeric value(s); (3) the identification of additional BMPs, including either preventing the exposure of pollutant and pollutant sources to storm water and/or further treatment of storm water prior to discharge from the Security Facility that will reduce pollutant concentrations to those below Table 1 Numeric Limits; and (4) time schedules for implementation of the proposed BMPs (if any). The time schedule(s) for implementation of additional BMPs shall ensure that all BMPs are implemented as soon as possible but no more than 180 days after Waterkeeper provides Security comments on the ARS, unless the Settling Parties agree on a later date based on the time needed to design, permit, procure, and install the necessary equipment.

17.3. ARS Review. Waterkeeper shall have thirty (30) calendar days upon receipt of Security's ARS to provide Security with comments on the

[2] The Analyte Reduction Strategy ("ARS") discussed in this Consent Decree is separate and distinct from any "Action Plan" discussed in the Storm Water Permit.

ARS prepared by a QISP. Within twenty-one (21) calendar days of Security's receipt of Waterkeeper's comments on the ARS, Security shall consider Waterkeeper's comments and shall either incorporate them into the ARS or, if Security declines to accept one or more of Waterkeeper's comments, provide Waterkeeper with a written explanation prepared by a QISP of the grounds for rejection.

17.4.  Disputes regarding the adequacy of a BMP shall not impact the schedule for implementing any other BMP set forth in the ARS. Any disputes as to the adequacy of the ARS shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section VI below.

17.5.  Security shall not be required to post any ARS to SMARTS.

18.  Security shall revise its SWPPP and/or Monitoring Implementation Plan ("MIP") as applicable within thirty (30) days of receipt of Plaintiff's ARS comments to reflect the changes and/or additional BMPs set forth in the ARS. Security shall notify Waterkeeper in writing when the final ARS has been completely implemented, and the SWPPP and/or MIP have been revised.

19.  After the Effective Date, during the implementation period of the Capture BMP as more fully described in **Exhibit D**, and if triggered pursuant to paragraph 17 above, Security shall be required to submit only one (1) ARS with additional BMPs, not including the Capture BMP, to be designed and implemented to reduce concentrations of analytes identified in Table 1 that triggered the ARS.

20.  If implementation of the Capture BMP project is abandoned by Security, and if triggered pursuant to paragraph 17 above, Security shall be required to submit only a total of two (2) ARS, with additional BMPs to be designed and implemented to reduce concentrations of analytes identified in Table 1 that triggered the ARS until the BMPs and schedule in **Exhibit B**, as agreed to by the Settling Parties during meet and confer or dispute resolution as described above, have been fully implemented.

21. After the Effective Date, if the Capture BMP is implemented pursuant to the schedule set forth herein, no ARS will be required for the remainder of the term of this Consent Decree.

**C. Visual Observations.**

22. All visual observations shall be conducted in accordance with the terms of the Storm Water Permit and this Consent Decree, and shall include at least the following:

22.1. <u>Storm Water Discharge Observations</u>. During the life of this Consent Decree, Security shall conduct visual observations at each point where storm water is discharged during each Qualifying Rain Event.

22.2. <u>Non-Storm Water Discharge Observations</u>. During the life of this Consent Decree, Security shall conduct monthly non-storm water visual observations at each discharge point.

23. Security shall maintain logs of the visual observations, which shall be available for review during the life of this Consent Decree in conformance with the Storm Water Permit and shall make these records available for Plaintiff's review via email within five (5) business days of the request.

**D. Employee Training.**

24. Within forty-five (45) days of the Effective Date, Security shall conduct additional employee training to familiarize employees at the Security Facility with the requirements of the Storm Water Permit and this Consent Decree. The training program shall include use of written training materials needed for effective implementation of the training program. Security shall also ensure that there are enough employees assigned to implement the BMPs and conduct other compliance activities required by the Storm Water Permit and this Consent Decree, and that these employees are properly trained to perform the required activities.

25. The training program shall require at least the following:

25.1. <u>Non-Storm Water Discharge Training</u>. Security shall train employees on the Storm Water Permit's prohibition of non-storm water

discharges, so that employees know what non-storm water discharges are, which can result from improper practices that may produce non-storm water discharges at the Security Facility, and how to detect and prevent them;

25.2. <u>BMP Training</u>. Security shall train employees on BMP implementation and maintenance to ensure that BMPs are implemented effectively to prevent or minimize the exposure of pollutants to storm water, to prevent or minimize the discharge of contaminated storm water, and to ensure the proper treatment of storm water at the Security Facility;

25.3. <u>Sampling Training</u>. Security shall designate an adequate number of employees or consultants to ensure the collection of storm water samples from each discharge location as required by this Consent Decree and/or the Storm Water Permit. The training shall include the proper sampling protocols, including chain of custody requirements, to ensure storm water samples are properly collected, stored, and submitted to a certified laboratory.

25.4. <u>Visual Observation Training</u>. Security shall provide training to all individuals performing visual observations at the Security Facility pursuant to this Consent Decree and/or the Storm Water Permit that includes when visual observations are required, the different types of visual observations required, and instruction on proper record keeping under the Storm Water Permit.

26.     Training shall be provided on an annual basis, or as otherwise required to ensure compliance with the terms of this Consent Decree, by a private consultant or a representative of Security who is a registered QISP familiar with the requirements of this Consent Decree and the Storm Water Permit. The training shall be repeated as necessary to ensure that employees are familiar with the requirements of this Consent Decree, the

Storm Water Permit, and the Security Facility's SWPPP and/or MIP, as appropriate to the employee's job descriptions. Any new employee who is responsible for implementation of any portion of the SWPPP, the MIP, or compliance with other terms of the Storm Water Permit or Consent Decree shall receive training within ten (10) business days after being hired, or before being responsible for compliance with the terms of the Storm Water Permit or Consent Decree.

27.     Security shall maintain training records to document compliance with Section II.E of this Consent Decree and shall make these records available for Plaintiff's review via email within two (2) business days of the request. The Training Program shall be specified in the SWPPP and Security shall modify the SWPPP as necessary to reflect the training program required by this Consent Decree.

**E.    Storm Water Pollution Prevention Plan and Monitoring Implementation Plan.**

28.     Within sixty (60) days of the Effective Date of this Consent Decree, Security shall revise the Security Facility's SWPPP and/or MIP as applicable to include:

      28.1.    All BMPs that are currently utilized at the Security Facility;

      28.2.    All BMPs identified and developed pursuant to this Consent Decree and/or the Storm Water Permit;

      28.3.    The specific individual(s) or positions responsible for compliance with the Storm Water Permit and this Consent Decree;

      28.4.    A detailed site map that includes at a minimum all information required by the Storm Water Permit and this Consent Decree;

      28.5.    A description of each industrial activity, all potential pollutant sources, and each potential pollutant associated with each industrial activity and/or pollutant source;

      28.6.    Incorporation of the requirements of the Storm Water Permit and this Consent Decree.

29.     Additional and Ongoing Revisions to SWPPP and/or MIP. Security shall

revise the SWPPP and/or MIP if there are any changes in the Security Facility's operations that may possibly affect the quality of storm water discharges at the Security Facility, including but not limited to changes to storm water discharge point(s)/sample location(s), changes or additions to the BMPs at the Security Facility resulting from an ARS.

30.     Commenting on Revised SWPPP and/or MIP. Security shall submit any revised SWPPP and/or MIP to Waterkeeper within five (5) days of submittal to SMARTS.

   30.1.     For any SWPPP or MIP revisions that are not the result of an ARS, Waterkeeper shall provide comments prepared by a QISP, if any, to Security within thirty (30) days of receipt of any revised SWPPP and MIP. Within thirty (30) days of receiving comments from Waterkeeper, Security shall incorporate Waterkeeper's comments into any revised SWPPP and/or MIP or shall justify in writing prepared by a QISP why any comment is not incorporated. Any disputes as to the adequacy of the SWPPP and/or MIP shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section VI below.

   **F.     Alternative Means of Compliance**

31.     Notice of Termination. The Settling Parties agree that if the Security Facility satisfies the requirements of and receives an approval for a "Notice of Termination" as that term is defined in the IGP shall be considered to be in full compliance with the terms of this Consent Decree and the provisions of Section III of this Consent Decree shall not apply so long as the Notice of Termination remains in effect.

**IV.     COMPLIANCE MONITORING AND REPORTING**

32.     Waterkeeper shall be allowed one site inspection in the first calendar year following the Effective Date and one site inspection following completion of the work designed and implemented to capture and retain on site the 85th Percentile Storm Event pursuant to Paragraph 11.1 above. In the event that Security fails to design and

implement a sufficient project to capture the 85th Percentile Storm Event at the Security Facility, and is required to prepare and file a Level 1 or Level 2 ERA Report as defined in the Permit or an ARS as defined in this Consent Decree, Waterkeeper shall be permitted to conduct a site inspection within ninety (90) days of each time there is an upload of an ERA Report to SMARTS or an ARS in order to inspect the newly implemented BMPs under the terms of the ERA Report(s) or ARS, and to ensure compliance with the Industrial General Permit as implemented at the Security Facility. Only one site inspection shall be allowed each calendar year during the term of this Consent Decree.

33.     Waterkeeper's counsel shall give Security's counsel notice of its request to conduct a site visit. Counsel for Security and Waterkeeper shall use best efforts to coordinate a site visit within ten (10) business days of said request but no longer than thirty (30) days after said request. All visitors to the site shall execute and agree to the terms of **Exhibit C** attached to this Agreement prior to entering the Facility.

34.     During a site inspection, Plaintiff and/or its representatives shall be allowed access to the Security Facility's SWPPP, MIP, and other monitoring records, reports, and all sampling data produced in accordance with the samples identified in paragraphs 14.1 and 14.2 of this Consent Decree for the Security Facility. In addition, during the site inspection, Plaintiff and/or its representatives may collect split samples of discharges from QSEs, even if outside of the first four hours of discharge, from the Security Facility. Any samples collected by Plaintiff shall be submitted to a certified California laboratory for analysis. Any onsite measurements such as pH shall be taken by a properly trained operator with properly calibrated instruments. Security shall have an opportunity to take concurrent measurements using its own equipment. Copies of the complete laboratory reports shall be provided to Security within five (5) business days of receipt.

35.     Reporting and Documents. During the life of this Consent Decree, Security shall copy Plaintiff on all documents related to storm water quality at the Security Facility that are submitted to the Regional Board, the State Board, and/or any State or local agency or municipality, including data and reports uploaded to SMARTS. Such

reports and documents shall be provided to Plaintiff concurrently as they are sent to the agencies and/or municipalities. Any correspondence related to Security's compliance with the Storm Water Permit or storm water quality received by Security from any regulatory agency, State or local agency, county or municipality shall be provided to Waterkeeper within ten (10) business days of receipt by Security.

36. <u>Compliance Monitoring and Oversight</u>. Security shall pay a total of Six Thousand Dollars ($6,000), in the first year of the term of this Consent Decree, and Three Thousand Dollars ($3,000) annually over the remaining four (4) years of the term of this Consent Decree to compensate Waterkeeper for costs and fees to be incurred for monitoring the Security Facility's compliance with this Consent Decree. Should the Capture BMP be installed and operative pursuant to the schedule in **Exhibit D**, monitoring payments of Three Thousand Dollars ($3,000) will not be required in the fourth and fifth years under the term of this Consent Decree. Payment shall be made within five (5) business days of the Effective Date, and thereafter on each anniversary of the Effective Date during the term payable to Los Angeles Waterkeeper via U.S. Mail or commonly accepted carrier to 120 Broadway, Santa Monica, CA 90401.

## V. <u>Environmental Project and Reimbursement of Litigation Fees and Costs</u>

37. <u>Environmental Project</u>. To remediate the alleged environmental harms resulting from non-compliance with the Storm Water Permit alleged in the Complaint, Security agrees to make a payment totaling Sixty Thousand Dollars ($60,000) to the Council for Watershed Health, and mailed via certified mail or overnight delivery to: Council for Watershed Health c/o Eileen Alduenda, 177 E. Colorado Blvd, Suite 200 Pasadena, CA 91105 to fund environmental project activities that will reduce or mitigate the impacts of storm water pollution from industrial activities adjacent to the Los Angeles River and its tributaries. Payment of the first $30,000 shall be made within ten (10) business days of the Effective Date. Payment of the second $30,000 shall be made within one (1) year of the Effective date.

38. Should Security fail to implement the Capture BMP pursuant to the schedule

in **Exhibit D** for any reason not excused by the force majeure provision herein, Security shall make a stipulated payment of Twenty-Five (25) Thousand Dollars ($25,000) to be used to fund environmental project activities within thirty (30) days of the date proscribed in **Exhibit D**. The Stipulated Payment shall be paid to the Council for Watershed Health and mailed via certified mail or overnight delivery to: Council for Watershed Health c/o Eileen Alduenda, 177 E. Colorado Blvd, Suite 200 Pasadena, CA 91105. Security shall provide Waterkeeper with a copy of such payment at the time it is made. Security shall make the Stipulated Payment within thirty (30) days of a missed deadline, unless Waterkeeper agrees in writing to an extension of that deadline. Security shall provide Waterkeeper with a copy of such payment at the time it is made.

39. For all other missed deadlines included in this Consent Decree, Security shall make a stipulated payment of One Thousand Dollars ($1,000) for each missed deadline included in this Consent Decree, not excused by Force Majeure. Payments for a missed deadline shall be used to fund environmental project activities. The Stipulated Payment shall be paid to the Council for Watershed Health and mailed via certified mail or overnight delivery to: Council for Watershed Health c/o Eileen Alduenda, 177 E. Colorado Blvd, Suite 200 Pasadena, CA 91105. Security shall provide Waterkeeper with a copy of such payment at the time it is made. Security shall make the Stipulated Payment within thirty (30) days of a missed deadline, unless Waterkeeper agrees in writing to an extension of that deadline. Security shall provide Waterkeeper with a copy of such payment at the time it is made.

40. <u>Reimbursement of Plaintiff's Fees and Costs</u>. Security shall pay a total of Seventy-Seven Thousand Five Hundred Dollars ($77,500.00) to Los Angeles Waterkeeper to reimburse Plaintiff for their investigation fees and costs, expert/consultant fees and costs, and reasonable attorneys' fees incurred because of investigating and preparing the lawsuit and negotiating this Consent Decree. Payments shall be made within ten (10) business days of the Effective Date and payable to: Aqua Terra Aeris Law Group LLP, Attn: Anthony M. Barnes via U.S. Mail or commonly

accepted carrier to 490 43rd Street, Suite 108, Oakland, CA 94609. Payment shall be made within ten (10) business days of the Effective Date.

41.     ARS Plan Payments. Security shall pay Four Thousand Dollars ($4,000) each time an Analyte Reduction Strategy plan is submitted to Waterkeeper. Payments shall be submitted simultaneously with the submittal of the ARS plan. Payments shall be made payable to "Los Angeles Waterkeeper" and addressed to Los Angeles Waterkeeper, 120 Broadway, Suite 105, Santa Monica CA 90401. Failure to submit a payment as required under this paragraph will constitute a breach of the Consent Decree.

## VI.     DISPUTE RESOLUTION

42.     This Court shall retain jurisdiction over this matter until the final termination date defined above for the purposes of implementing and enforcing the terms and conditions of this Consent Decree and adjudicating all disputes among the Settling Parties that may arise under the provisions of this Consent Decree, unless there is an ongoing dispute at the time of the final termination date, in which case this Consent Judgment will terminate upon final resolution of the dispute. The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

43.     If a dispute under this Consent Decree arises, or either Party believes that a breach of this Consent Decree has occurred, the Parties shall schedule a meet and confer within ten (10) business days of receiving written notification from the other Party of a request for a meeting to determine whether a violation of this Consent Decree has occurred and to develop a mutually agreed upon plan, including implementation dates, to resolve the dispute. If such disputes cannot be resolved through this meet and confer process, the Parties agree to request a settlement meeting before the Magistrate Judge assigned to this action. The Parties agree to file any waivers necessary for the Magistrate Judge to preside over any settlement conference pursuant to this Paragraph. If the Parties cannot resolve the dispute by the conclusion of the settlement meeting with the Magistrate Judge, the Parties agree to submit the dispute via motion to the District Court.

In resolving any dispute arising from this Consent Decree, the Court shall have discretion to award attorneys' fees and costs to either party. The relevant provisions of the then-applicable CWA and Rule 11 of the Federal Rules of Civil Procedure shall govern the allocation of fees and costs in connection with the resolution of any disputes before the Court. The Court shall award relief limited to compliance orders and awards of attorneys' fees and costs, subject to proof.

44. <u>Force Majeure.</u> No Settling Party shall be considered to be in default in the performance of any of its obligations under this Consent Decree when performance becomes impossible due to circumstances beyond the Settling Party's control, including Force Majeure, which includes, but is not limited to, any act of god, war, fire, earthquake, windstorm, flood or natural catastrophe; civil disturbance, vandalism, sabotage, or terrorism; restraint by court order or public authority or agency; inability to proceed due to pending litigation under the California Environmental Quality Act; action or non-action by, or inability to obtain the necessary authorizations, approvals, or permits from, any governmental agency or private party; or inability to obtain equipment or materials from the marketplace if such materials or equipment are not reasonably available. Impossibility and/or Force Majeure shall not include normal inclement weather, economic hardship, or inability to pay. Any party seeking to rely upon this paragraph to excuse or postpone performance shall have the burden of establishing that it could not reasonably have been expected to avoid the impossibility or Force Majeure event and which by exercise of due diligence has been unable to overcome the failure or performance. Delay in compliance with a specific obligation under this Consent Decree due to impossibility and/or Force Majeure as defined in this paragraph shall not excuse or delay compliance with any or all other obligations required under this Consent Decree.

a. If Security claims compliance was or is impossible, it shall notify Plaintiff in writing as soon as possible, but in no event more than five (5) business days of the date that Security learns of the event or circumstance that caused or would cause a violation of this Consent Decree (hereinafter referred to as the "Notice of Nonperformance").

b.     Within ten (10) business days of sending the Notice of Nonperformance, Security shall send Plaintiff a detailed description of the reason for the nonperformance and the specific obligations under the Consent Decree that are or have been affected by the Force Majeure. It shall describe the anticipated length of time the delay may persist, the cause or causes of the delay, the measures taken or to be taken by Security to prevent or minimize the delay, the schedule by which the measures shall be implemented, and the anticipated date of compliance. In no event shall the deadline be extended beyond the length of the delay caused by the Force Majeure event. Security shall adopt all reasonable measures to avoid and minimize such delays and shall provide Waterkeeper with notice of a reasonable date certain of completion of the prior nonperformance of a specific obligation under the terms of this Consent Decree within fifteen (15) days of discovery of the date certain for completion.

c.     The Settling Parties shall meet and confer in good faith concerning the non-performance and, where the Settling Parties concur that performance was or is impossible due to an event or matter covered under the Force Majeure provisions of this Consent Decree, despite the timely good faith efforts of Security, new deadlines shall be established.

d.     If Plaintiff disagrees with Security's Notice of Nonperformance, or if the Settling Parties cannot timely agree on the terms of new performance deadlines or requirements, either party shall have the right to invoke the dispute resolution procedure pursuant to Section VI.

45.     <u>Administrative Delay</u>. Security shall diligently pursue any approvals required for compliance with this Consent Decree. Should such diligent pursuit of approvals required for compliance be unavailing due to actions of or inaction on the part of the any governmental or regulatory entity with jurisdiction over Security, and Security reasonably demonstrates that these delays are not attributable to any action or inaction on the part of the Security, any relevant compliance deadlines set forth in this

Consent Decree shall be tolled until such time as Parties agree to an alternative means of compliance with the Consent Decree pursuant to the Force Majeure clause herein.

## VII.   MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE

46.   Waterkeeper's Release. Upon the Effective Date of this Consent Decree, Waterkeeper, on its own behalf and on behalf of its current and former officers, directors, employees, and each of their successors and assigns, and its agents, attorneys, and other representatives releases all persons including, without limitation, Security (and each of their direct and indirect parent and subsidiary companies and affiliates, and their respective current and former officers, directors, members, employees, shareholders, and each of their predecessors, successors, and assigns, and each of their agents, attorneys, consultants, and other representatives) from and waives all claims alleged in the Notice Letter and/or Complaint up to the termination of this Consent Decree.

47.   Security's Release. Upon the Effective Date of this Consent Decree, Security, on its own behalf and on behalf of its current and former officers, directors, employees, members, and each of their successors and assigns, and their agents, attorneys, and other representatives releases Waterkeeper (and its current and former officers, directors, employees, members, parents, subsidiaries, and affiliates, and each of their successors and assigns, and its agents, attorneys, and other representatives) from and waives all claims which arise from or pertain to this action, including all claims for fees (including fees of attorneys, experts, and others), costs, expenses, or any other sum incurred or claimed for matters related to Waterkeeper's Notice Letter and Complaint up to the termination of this Consent Decree by the Court.

## VIII.   MISCELLANEOUS PROVISIONS

48.   No Admission of Liability. Neither this Consent Decree, the implementation of additional BMPs, nor any payment pursuant to the Consent Decree shall constitute or be construed as a finding, adjudication, admission, or acknowledgment of any fact, law, or liability, nor shall it be construed as an admission

of violation of any law, rule, or regulation. Security maintains and reserves all defenses they may have to any alleged violations that may be raised in the future.

49. <u>Construction</u>. The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Storm Water Permit, the Clean Water Act, or specifically herein.

50. <u>Choice of Law</u>. The laws of the United States and the State of California shall govern this Consent Decree.

51. <u>Severability</u>. If any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

52. <u>Correspondence</u>. Unless specifically provided for in this Consent Decree, all notices required herein or any other correspondence pertaining to this Consent Decree shall be sent by U.S. mail or electronic mail as follows:

<u>If to Plaintiff:</u>

Los Angeles Waterkeeper
Attn: Bruce Reznik, Liz Jones
120 Broadway, Suite 105
Santa Monica, CA 90401

<u>With a copy to</u>

Anthony M. Barnes
AQUA TERRA AERIS LAW GROUP LLP
490 43rd St., Ste. 108
Oakland, CA 94609


<u>If to Security</u>:

Security Paving Company, Inc
Attn: Robert Shaffer
13170 Telfair Ave.
Sylmar, CA 91342

<u>With a copy to:</u>

Environmental Law Group LLP
Attn: S. Wayne Rosenbaum
225 Broadway, Suite 1900
San Diego, CA 92101

53.     Notifications of communications shall be deemed submitted three (3) business days after having been sent via U.S. mail or the day of sending notification or communication by electronic mail. Any change of address or addresses shall be communicated in the manner described above for giving notices.

54.     <u>Counterparts</u>. This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document. Telecopy, email of a .pdf signature, and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

55.     <u>Modification of the Consent Decree</u>. This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Settling Parties. If any Settling Party wishes to modify any provision of this Consent Decree, the Settling Party must notify the other Settling Party in writing at least twenty-one (21) days prior to taking any step to implement the proposed change.

56.     <u>Full Settlement</u>. This Consent Decree constitutes a full and final settlement of this matter.

57.     <u>Integration Clause</u>. This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the Settling Parties and expressly supersedes any and all prior oral or written agreements, covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

58.     <u>Authority</u>. The undersigned representatives for Plaintiff and Security each certify that he/she is fully authorized by the party whom he/she represents to enter the terms and conditions of this Consent Decree.

59. The Settling Parties certify that their undersigned representatives are fully authorized to enter this Consent Decree, to execute it on behalf of the Settling Parties, and to legally bind the Settling Parties to its terms.

60. The Settling Parties, including any successors or assigns, agree to be bound by this Consent Decree and not to contest its validity in any subsequent proceeding to implement or enforce its terms.

**IN WITNESS WHEREOF**, the undersigned have executed this Consent Decree as of the date first set forth below.

APPROVED AS TO CONTENT

Dated: _____     By: _____
                                   Bruce Reznik
                                   Executive Director
                                   Los Angeles Waterkeeper

Dated: _____     By: _____
                                   Robert Shaffer
                                   Security, Paving Company, Inc.
                                   General Counsel

APPROVED AS TO FORM

Dated: _____     By: _____
                                   Anthony M. Barnes
                                   Los Angeles Waterkeeper
                                   Attorney for Plaintiff

Dated: _____     By: _____
                                   S. Wayne Rosenbaum
                                   Environmental Law Group LLP
                                   Attorney for Security Paving Company, Inc.

**IT IS SO ORDERED.**

Date: January 16, 2020

_____
Hon. Dean D. Pregerson